IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>WILLIAM ARTHUR CLAWSON,<br><br>Defendant/Movant. | Cause No. CR 25-01-M-DWM<br><br><br><br>ORDER |

Pending before the Court is a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Judgment filed by pro se petitioner[1] William Arthur Clawson ("Clawson"). (Doc. 33.) Clawson also filed a brief in support, along with exhibits, and a supplement and exhibits. (Docs. 34, 34-1, 36 and 36-1.) The Government was ordered to respond to Clawson's motion and complied. *See*, (Doc. 45.) Clawson has replied, *see* (Doc. 49); accordingly, this matter is ripe for ruling.

Clawson generally challenges the 24-month Bureau of Prisons sentence, followed by 3 years of supervised release, imposed upon him after he pled guilty to

[1] Clawson has been released from the custody of the Bureau of Prisons and is now residing in Oklahoma City. *See*, (Doc. 43.)

the Information.

## I. Background

Clawson was charged with two counts: Wire Fraud, in violation of 18 U.S.C. § 1343, and Corrupt Endeavor to Obstruct and Impede the Administration of the Internal Revenue Laws, in violation of 26 U.S.C. § 7212(a). (Doc. 1.) On January 10, 2025, the same day that the Information was filed, a Plea Agreement was contemporaneously filed. (Doc. 2.) Pursuant to the plea agreement, Clawson agreed to plead guilty to both counts contained in the Information and that parties agreed to a loss amount calculation of $1,158,811.40 for purposes of Clawson's guideline calculation. *See*, (*Id.* at 2-3.) Further, Clawson agreed not to object to restitution and agreed to pay full restitution for all losses in an amount **not less than** $1,158,811.40, with the final amount of restitution to be determined at sentencing. (*Id.* at 8-9)(emphasis added).

On February 13, 2025, Clawson appeared before the Undersigned for a change of plea hearing. *See*, Min. (Doc. 14.) The Government outlined the terms of the plea agreement in open court. Specifically, it was noted that Clawson agreed to pay full restitution for all losses in an amount no less than $1,158,811.40; that he would pay all legally applicable interest and fees on restitution owed to the IRS and the Small Business Administration, and the United Staes agreed not to pursue charges or restitution for $547,311.02 that had already been assessed

against Clawson in his Missoula County District Court Case, *State v. Clawson*, DC-22-114. *See*, Trans. (Doc. 44 at 3-4.) The parties agreed that the Missoula County restitution amount would not be used for purposes of calculations under the United States Sentencing Guidelines ("USSG"); the Government also agreed not to pursue charges against Ann Mari Clawson for her involvement in transactions uncovered in the federal criminal investigation. (*Id.* at 4.)

The issue of the Missoula County District Court case was discussed later in the change of plea hearing. The Undersigned asked Clawson if he understood the non-prosecution provision and the $547,311.02 amount referenced by the Government. Clawson affirmed that he received a suspended sentence in the state matter and as a result of that conviction he was required to pay $547,311.02 in restitution. (*Id.* at 20.) Clawson was found to be competent, and his guilty pleas were accepted. *See*, Min. (Doc. 14); *see also*, Hrg. Trans. (Doc. 44.)

On July 31, 2025, a sentencing hearing was held. *See*, Min. (Doc. 24.) This Court accepted the plea agreement, and the parties did not object to the Presentence Investigation Report ("PSR"). To fulfill the sentencing objectives of 18 U.S.C. § 3553(a), Clawson was sentenced to the Bureau of Prisons for 24 months on Count 1 and 12 months on Count 2, with the sentences to run concurrently, followed by a 3-year term of supervised released. (*Id.*); *see also*, Judg. (Doc. 27.) Clawson did not appeal.

## II. Clawson's Claims

Clawson challenges the sentence imposed upon him after he pled guilty to the Information. Clawson specifically challenges the amount of restitution imposed. *See*, (Doc. 34 at 5-9.) He also alleges that a double jeopardy violation occurred, (*id.* at 9-14), and, that the Government breached its plea agreement. (*Id.* at 14-25.) In his supplement, Clawson argues that the Paycheck Protection Program loan ("PPP loan") that he received was lawful. (Doc. 36.)

The essence of Clawson's argument is that he was wrongfully assessed restitution against Lionheart International ("Lionheart"), because he had already resolved similar claims involving that entity in his state prosecution. Clawson believes that in pursuing restitution on behalf of Lionheart, the Government not only violated his right to be free from double jeopardy, but in so doing breached the plea agreement. Clawson also asserts that the PPP loan was properly obtained and the debt was forgiven, accordingly, he should not be held responsible for repayment via restitution in these proceedings.

Seemingly aware of the restrictions on 28 U.S.C. § 2255 filings and the unconditional appeal waiver contained within his plea agreement, *see* (Doc. 2 at 12-13), Clawson alleges that all of his claims fall under an overarching umbrella allegation of ineffective assistance of trial counsel ("IAC").

//

## III. Analysis

The Court has considered Clawson's challenge to the validity of his sentence, as well as the response provided by the Government. For the reasons explained below, the § 2255 motion will be denied and a certificate of appealability will not issue.

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States [...] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

### i. Non-Cognizability

There are issues with Clawson's filing that preclude relief in this Court. Clawson does not contend that he is actually innocent or that he should be allowed

to withdraw his guilty plea. In fact, Clawson acknowledges he is guilty of the counts of conviction and merely challenges the amount of restitution imposed. *See e.g.*, (Doc. 34 at 7)("Mr. Clawson does not say he wants to withdraw his plea of guilty, because he is guilty"); *see also, id.* at 21 ("Yes, Mr. Clawson admits that he broke the law, and accepts full responsibility. However, the restitution amount is dead wrong."). There are several problems, at this juncture, with the position taken by Clawson.

First, an individual who voluntarily and intelligently pleads guilty to a criminal offense generally may not seek collateral relief in federal habeas proceedings based upon an antecedent constitutional infirmity. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973). The Supreme Court explained in *Tollett* that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [range of competence demanded of attorneys in criminal cases].

*Tollett*, 411 U.S. at 267. Clawson does not argue that his plea was unintelligent or involuntary; in fact, he concedes his guilt. Clawson simply disputes the amount of restitution imposed.

A Section 2255 motion, however, cannot be used as a vehicle to collaterally attack a restitution order. In *United States v. Thiele*, the panel explicitly found that a federal defendant "cannot collaterally attack his restitution order in a § 2255 motion," agreeing with sister circuits holding that "by its plain terms, § 2255 is available only to defendants who are in custody and claiming the right to be released." *United States v. Thiele*, 314 F.3d 399, 401 (9th Cir. 2002)(*citing United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999)(collecting cases)). The *Thiele* court also held that "couch[ing] restitution claims in terms of ineffective assistance of counsel" does not save them. *Id.* at 402. Accordingly, Clawson's acknowledgment that he has been released from custody and that his claims go only to restitution underscores the invalidity of his claims.

**ii. Lack of Merit**

To the extent that Clawson's claims could be construed as cognizable, he has not shown that the claims have merit.

**Lionheart International**

As set forth above, Clawson agreed at the outset of these proceedings to pay restitution in an amount "not less than $1,158,811.40" to his former clients, the IRS, and the SBA. *See*, Plea Agreement (Doc. 2.) As the Court understands his argument, Clawson believes the Government was completely precluded from pursuing any restitution on behalf of Lionheart in these federal proceedings,

because he had been ordered to pay restitution to this same entity in his state proceedings. Clawson seems to suggest that the non-prosecution provision of his plea agreement, by which the government agreed not to seek funds ordered by the state court and not to prosecute his wife for any federal criminal offenses, entirely prevented the Government from pursuing any additional funds on behalf of Lionheart. While neither Clawson nor his attorney presented this argument at sentencing, it is not cognizable and lacks merit.

Clawson collected $1,654,103.55 from Lionheart which was to be used to pay their taxes, but Clawson only paid $536,027.03 to the IRS and the State of Montana. In his state criminal case, Clawson was ordered to pay $547,311.02. Thus, taking away the amount that Clawson actually paid in taxes, along with the amount of restitution ordered in the state case, there was a total remaining loss amount to Lionheart of $570,765.50, as reflected in the PSR. *See*, (Doc. 28 at 10, ¶ 31); *see also*, (Doc. 45 at 15-16.) Contrary to Clawson's assertions, the restitution amount in the present matter does not include the restitution amount imposed in Clawson's state case, which was expressly excluded by the parties' agreement. Thus, Clawson's contention that the Government breached the plea agreement by including the state restitution amount is simply inaccurate.

Moreover, there is no double jeopardy problem related to the Lionheart restitution. The Double Jeopardy Clause of the Fifth Amendment to the United

States Constitution provides: "No person shall…be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Supreme Court reaffirmed the dual-sovereignty doctrine of the Double Jeopardy Clause. *Gamble v. United States*, 587 U.S. 678 (2019). "Under this 'dual-sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute." *Id.*, at 681. This has long been recognized as a "firmly established principle," and it is well established that "a federal prosecution is not barred by a prior state prosecution of the same person for the same acts." *Abbate v. United States*, 359 U.S. 187, 194-95 (1959).

In *United States v. Lanza*, the Court explained:

> Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each…The defendants thus committed two different offenses by the same act, and a conviction by a court of Washington of the offense against that state is not a conviction of the different offense against the United States, and so is not double jeopardy.

260 U.S. 377, 382 (1922). In *Gamble*, the Court reaffirmed this principle and noted it would continue to "appl[y] our precedent without qualm or quibble." *Gamble*, 587 U.S. at 688. Under federal law, the State of Montana and the United States are both entitled to exercise their sovereignty and enforce their respective criminal laws.

Additionally, as pointed out by the Government, Clawson was not charged in these proceedings for his theft from Lionheart; he was charged with a wire fraud transaction involving The Higher Standard and for obstructing and impeding the IRS. The federal investigation apparently disclosed additional fraud against Lionheart that was not uncovered during the state prosecution. The Government argues that while it was not limited in its prosecution by the scope of the state prosecution, it nonetheless agreed to exempt the state restitution amount from the federal case and not include it towards Clawson's USSG calculations. *See*, (Doc. 45 at 16-17.) Clawson provides no legal support for his contention that the Government could not pursue the additional loss on behalf of Lionheart. And Clawson now omits the fact that he expressly agreed to the federal restitution amount at several different points during these proceedings. In short, federal constitutional Double Jeopardy principles are not offended in the instant case.

**Paycheck Protection Program Loan**

In response to COVID-19, the Small Business Administration ("SBA") administered PPP loans via the 2020 CARES Act to help small businesses keep workers during the pandemic. Clawson obtained a PPP loan for $99,900. Clawson maintains that he properly qualified for the loan and obtained complete forgiveness from the SBA. Clawson asserts that the funds were lawfully used for payroll purposes. *See*, (Doc. 34 at 18.)

Conversely, the Government argued at sentencing, consistent with the PSR, that Clawson used the bulk of the funds for nonpayroll expenses and applied only 32% of the funds obtained from the loan for payroll purposes. *See*, Sent. Trans. (Doc. 32 at 33); *see also*, PSR (Doc. 28 at 14-15.)

Clawson wants to have it both ways; he wanted the benefits outlined in a plea agreement, as well as the benefit of accepting responsibility for his actions at the time of sentencing but now does not want to be bound by the terms of the agreement, including repayment. At the sentencing hearing Clawson acknowledged that he was "taking responsibility" for the PPP loan, despite purportedly following the rules and receiving forgiveness. *See*, (Doc. 32 at 28-29.) Clawson stated that he "made a choice" when presented with a plea agreement, as there were factual arguments surrounding the validity of the loan. Nonetheless, Clawson "didn't want to go through the process of indictment and fighting everything." (*Id.* at 29:18-19.) While Clawson maintained he felt he did everything right relative to the loan, he conceded that there was "some kind of factual argument around [it]" that he was electing not to contest it at a trial. (*Id.* at 30:8-12.)

It appears to the Court now that Clawson is facing the reality of paying restitution for the PPP loan, as well as restitution to Lionheart, he is having buyer's remorse. A plea agreement is like "any other contract in which someone may have

buyer's remorse after an unforeseen future event- the contract remains valid because the parties knowingly and voluntarily agreed to the terms. There is no do-over just because a defendant later regrets agreeing to a plea deal." *United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021).

In the instant case, however, the restitution was not unforeseen event. At the time of Clawson's initial appearance on the Information, he and counsel had bargained with the Government and arrived at a resolution of this case. Clawson agreed to the term in his Plea Agreement that the restitution amount he would be responsible for was to be not less than $1,158,811.40, with the final amount to be determined at sentencing. The final restitution amount, including the PPP loan and Lionheart restitution, was determined to be $1,309,591.12. *See e.g.*, Judg. (Doc. 25.) The restitution was not unforeseen; it was a term of the plea agreement/contract to which Clawson was a party. Clawson's present dissatisfaction does not create an issue of constitutional import, nor does it entitle Clawson to a "do over." *Goodall*, 21 F.4th at 562.

**Ineffective Assistance of Counsel**

Against the background of the restitution for both Lionheart and the PPP loan, Clawson asserts an overarching claim of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his attorney failed to exercise the degree of skill and

diligence a reasonably competent attorney would exercise under similar circumstances. *Strickland v. Washington*, 466 U.S. 668, 67 (1984). A defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* In *Strickland*, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and prejudice." 466 U.S. at 687.

First, "deficient performance" means representation that "fell below and objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The defendant must identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment considering the circumstances. *See, Strickland*, 466 U.S. at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). There is a strong presumption that counsel's performance fell within the "wide range of professional assistance." *Strickland*, 466 U.S. at 689. Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689; *Quintero-Barraza*, 78 F.3d at 1349.

Second, to demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011)(*quoting Strickland*,

466 U.S. at 693). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining process, including to the decision whether to accept or reject a plea offer. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985)(to prevail on prejudice in the context of a plea, defendant must demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Where a defendant pleaded guilty and no trial occurred, "the defendant must demonstrate that absent his attorney's incompetence, [the defendant] would rationally have rejected the plea bargain and would either have gone to trial or received a better plea bargain instead." *United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022); *see also, Premo v. Moore*, 562 U.S. 115, 125 (2011)("[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage.").

A court evaluating an ineffective assistance of counsel claim is limited to evidence contemporaneous to the guilty plea, and looking at the contemporaneous evidence, the court assesses the likelihood the defendant would prevail at trial, and the relative consequences of the defendant's guilty plea compared to a guilty verdict at trial. *Rodriguez*, 49 F.4th at 1214.

Clawson does not state what steps he believes counsel should have undertaken on his behalf to have performed proficiently relative to his guilty plea. Without providing any specifics, Clawson generally claims that he was denied "his due process and constitutional rights" in the plea agreement process, the presentencing investigation, and during sentencing. (Doc. 34 at 19.) Clawson restates his umbrella argument, addressed above, that the "grossly inaccurate" restitution amount caused a double jeopardy violation and breach of the plea agreement, and that this was all a result of the purported ineffective assistance of counsel. (*Id.* at 6, 7, 9, 12, 13, 16, 17.) Clawson also contests being held accountable for the PPP loan. (*Id.* at 16-18.)

As set forth above, however, there was no "gross" miscalculation of the restitution amount. The Government excluded the $547,311.02 that Clawson was ordered to pay in his state case from the federal restitution amount. There was no double jeopardy violation by the Government including additional restitution owed to Lionheart, nor did they breach the plea agreement by including Lionheart as a victim of Clawson's federal fraud. Moreover, Clawson specifically agreed to repay the PPP loan and restitution to his victims. Thus, counsel cannot be faulted for failing to lodge objections to provisions of the very agreement which Clawson knowingly and intelligently entered. Clawson has not identified any unreasonable acts or omissions committed by trial counsel or showed that counsel performed

deficiently by acting outside of the "wide range" of reasonable professional assistance. *Strickland* at 689-90.

But even if Clawson could show that counsel somehow performed deficiently, which he has not, Clawson has not demonstrated on the record before the Court that he was prejudiced. Clawson acknowledges he is guilty and that he does not wish to withdraw his plea and go to trial. *See*, (Doc. 34 at 7, 21, 23.) Thus, Clawson by his own admission concedes that he would not have rejected a plea agreement and proceeded to trial. And while he maintains he accepts responsibility for his crimes, Clawson still seeks modification of the restitution amount to which he expressly agreed. This argument falls short of the demanding standard Clawson needs to make at this juncture to show *Strickland* prejudice.

The Court finds both Clawson's double jeopardy and restitution challenges lack legal support. Had Clawson wished to mount a double jeopardy defense or contest the overall restitution amount, he certainly could have done so at trial and on direct appeal therefrom. But Clawson specifically agreed to pay restitution. In exchange for his guilty pleas, the Government agreed not to pursue criminal charges against his wife. Clawson's protestations come too late and via the wrong remedy. Moreover, Clawson has not conclusively shown that counsel performed deficiently relative to the restitution and loss amounts prior to entry of his guilty plea or that he was prejudiced as a result. On the record before this Court,

Clawson has simply not shown that he is entitled to relief.

For all of the reasons set forth herein, Clawson's § 2255 motion will be denied and dismissed.

IV. **Certificate of Appealability**

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court. 28 U.S.C. § 2253( c)(1)(B). "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(*citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Under this standard, the Court concludes that Clawson is not entitled to a certificate of appealability. No reasonable jurist would find debatable Clawson's failure to demonstrate entitlement to relief on the claims presented in his § 2255 Motion.

Accordingly, IT IS ORDERED:

1. Clawson's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 33) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately

process the appeal if Clawson files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 25-29-M-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Clawson.

DATED this 24th day of November, 2026.

Donald W. Molloy, District Judge
United States District Court